IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AIDA E. MARTINEZ-TORO
Plaintiff
vs
COMMISSIONER OF SOCIAL SECURITY
Defendants

CIVIL 11-1835CCC

**STATEMENT OF REASONS**

The Court having entered judgment on this date (docket entry 18) affirming the Secretary's determination in this case, it now gives its Statement of Reasons.

Before the Court is a complaint filed on August 26, 2011 by claimant Aida E. Martínez-Toro (docket entry 1) to review the final decision of the Commissioner of Social Security which found that she was not disabled through December 31, 2006, the date last insured . In her memorandum of law plaintiff avers that the Administrative Law Judge (ALJ) "completely disregarded the opinions of all the examining or treating sources of record: the claimant's treating psychiatrist and physician, Dr. Rojas and Dr. Sidi Ramírez, and the examining Social Security consultative psychiatrist of record, Dr. Armando Caro." She also contends "that the ALJ 'swept aside the reports and progress notes of Dr. Ariel Rojas Davis," (docket entry 13, p. 20) and that he "gave controlling weight to the opinion of a non examining psychologist, Jeannette Maldonado." Docket entry 13, p. 16. As will be discussed below, it is incorrect to conclude that the administrative judge completely disregarded the consultative psychiatrist, Dr. Caro's findings, that he simply gave controlling weight to Dr. Maldonado's opinion, and that he substituted his own opinion for that of Dr. Rojas.

Contrary to claimant's argument, it is within the Secretary's domain to give greater weight to the reports of medical experts who are commissioned by him, and, a treating physician's conclusions regarding total disability may be rejected when there is medical

CIVIL 11-1835CCC                              2

evidence to the contrary.    <u>Keating v. Secretary of Health and Human Services</u>, 848 F.2d 271 (1st Cir. 1988).

The Commissioner points out that Dr. Rojas' medical evidence was "very limited, consisting only of an October 13, 2005 letter stating that he had been treating plaintiff for major depressive disorder since January 1999 and checklist and summary conclusions form dated April 24, 2005 (Tr. 264-70)." Docket entry 17, p. 6.  He also points out that the "checklist and summary forms dated May 25, 2007, August 31, 2007, March 9, 2009, were authored well after the expiration of plaintiff's insured status on December 31, 2006 and are therefore, not probative on her condition during the relevant period . . ." nor, if considered, do they "support the inordinately severe restrictions articulated by the doctor in the April 24, 2005 report." Docket entry 17, p. 7.  As an example, the Commissioner refers to Dr. Rojas' description of plaintiff as "cooperative," "coherent, relevant and logical . . ." having "no suicidal or homicidal thoughts" and "fully oriented." Docket entry 17, p. 7.

The Court has carefully examined all of the medical records and the transcript of the administrative hearing. The claimant waived the right to be present at such hearing.  Her application for disability benefits is dated June 15, 2005 (Tr. 73). In such application she states that she was born on December 25, 1961 and became disabled since January 1, 2004. Claimant failed a Motion for Change in Onset Date on May 18, 2009 (Tr. 68) and informed that she wished to change the "alleged onset date of disability to January 29, 2004. It is undisputed that she was insured through December 31, 2006. She is an unskilled worker 44 years old at the time that she applied for benefits who for 18 years worked as a fish cleaner at a Starkist® tuna canning plant in Mayagüez, Puerto Rico.

Claimant's treating physicians are Dr. Ariel Rojas Davis, psychiatrist, and Dr. Sadi Ramírez Pérez, a general practitioner.  The latter prepared a Treatment Summary (Tr. 206-208) dated May 9, 2007 which describes claimant's mental symptoms as periods with "anxiety, depression, frequent headaches, frequent episodes of fear" and the diagnostic

CIVIL 11-1835CCC					3

impression as "continued HBP [high blood pressure], anxiety, depression, panic disorder, [and] tension headaches." She reported (Tr. 204) that the patient's response to treatment was "good" and observed (Tr. 204) "from the point of view of HBP she is under well control and doesn't have a problem, but we have to keep in mind her mental status. Please contact Dr. Ariel Rojas." (Tr. 205). This was in response to question number 4 which inquired as to the patient's tolerance with respect to an eight-hour work day, five days per week, on a sustained basis. Plaintiff submitted twenty-one pages of unintelligible notes of Dr. Ramírez which covers the years 2004 and 2005 from which you can glean scraps of information that appear in the corresponding translations. These mostly refer to brief references to different medications. Regarding her treating psychiatrist, Dr. Ariel Rojas Davis, the ALJ made the following observations which are borne out by the record:

> The claimant did not submit progress notes reflecting her treatment with Dr. Rojas. The evidence from this psychiatrist consists of four prepared documents completed by him, to wit, a checklist of signs and symptoms, spaces for diagnosis, description of treatment and prognosis and spaces to mark mental abilities and aptitudes to work and to check out functional limitations signed on April 22, 2005, a very short Spanish language note entitled *A Quien Pueda Interesar* (To Whom It May Concern) dated October 31, 2005, a form entitled in Spanish *Evaluación Inicial* (Initial Evaluation) dated May 25, 2007 and an August 31, 2007 "Summary of Treatment" (Resumen de Tratamiento) form (Exhibit 5F).
>
> . . . .
>
> The absence of progress notes from the claimant's psychiatric treatment with Dr. Rojas-Davis has deprived the undersigned Administrative Law Judge from analyzing the pattern of said treatment and its effect on the claimant's daily living and capacity to perform work-related activities at the different treatment interviews, reason for which our analysis in terms of treatment is limited to Dr. Rojas-Davis' reports, the consultative examination and the analysis from Disability Determination Program's psychologists. As indicated above, the consultative psychiatric evaluation revealed normal mental status.

(Emphasis ours). Docket entry 13-1, p. 4.

Claimant alleges that what she submitted with respect to her treatment with Dr. Rojas and his conclusions is sufficient. What she bypasses is the utter lack of justification for withholding Dr Rojas Davis' progress notes and treatment records from the January 27,

CIVIL 11-1835CCC                                4

1999 date, reported as her first visit (Tr. 251), until March 9, 2009, the date reported as her last appointment (Tr. 299). A full decade of records, unaccounted for, which could have shed light as to the degree of severity of her depression at different time periods, the duration of symptoms, as well as her physical, social and occupational manifestations during that extended ten-year period. Granted that she alleges that her disability onset was June 2004. Yet, the records for the relevant period from alleged onset through her last insured status, that is, June 2004 to December 2006, are also missing.

      Reference is made to the decade since claimant avers that, given the extended period of treatment from 1999 to 2009, one should take as sufficient the forms submitted by Dr. Rojas Davis which were described by the ALJ in his decision. The first of these is a Treatment Summary where Dr. Rojas Davis makes general reference to symptoms of "frequent episodes of crying, irritability, and persistent insomnia" that span from the first visit in 1999 to the last visit in 2007, as indicated at Tr. 252. In his Initial Evaluation (Tr. 253, translated at Tr. 258), Dr. Rojas Davis again covers the period of 1999 to 2007, and, under history of mental illness, he states the following: "[p]atient mentions previous episodes of depression in 1999. Under [illegible] treatment since 6/29/04." He described as chief complaint and symptoms, "[p]ersistent insomnia, sad most of the time, [illegible]. Frequently loses concentration." (Tr. 258). At page 3 of his Initial Evaluation (Tr. 260) he describes her attitude as "cooperative," her posture as "tense," displaying "psychomotor retardation," her mood as "depressed," her thought process as "coherent," "relevant," and "logical," with "poor thought content" but without "suicidal thoughts" or "homicidal thoughts." At page 4 (Tr. 261) of the evaluation, he does not report that she has experienced hallucinations or other perceptual disorders and reported that she was oriented as to person, place and time. Within a range of adequate/diminished/poor, he concluded that her attention and concentration were "diminished," found that her intellect was "proportionate to level of education," reported her immediate and recent memory as "affected," and her remote

CIVIL 11-1835CCC                                    5

memory as "preserved," and regarded her judgment and introspection to be "poor." The Initial Evaluation is followed by a "To Whom It May Concern" certification dated October 13, 2005 to the effect that claimant has been receiving treatment since January 27, 1999 for a depressive disorder and taking three medications: Zoloft, Alprazolan and Estazolam. Tr. 264. Dr. Rojas Davis answered a questionnaire related to claimant's mental impairments (Tr. 265-271). The instructions clearly requested to "[a]ttach all relevant treatment notes and test results that have not been provided previously to the Social Security Administration." This document is what the ALJ refers to as the April 22, 2005 report in which Dr. Rojas Davis marked the following patient's symptoms: "anthedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight change, decreased energy, feelings of guilt or worthlessness, somatization unexplained by organic disturbance, mood disturbance, difficulty thinking or concentrating, psychomotor agitation or retardation, and sleep disturbance. (Tr. 265).

      Without ever having submitted progress notes or test results he checked off "[m]arkedly limited capacity" to: remember work-like procedures, understand and remember very short and simple instructions, understand and remember detailed instructions, carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, maintain regular attendance and be punctual within customary, usually strict tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in a routine work

CIVIL 11-1835CCC                                         6

setting, deal with normal work stress, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. Dr. Rojas Davis found claimant "[m]oderately limited" only as to her ability to interact appropriately with the general public. (Tr. 267, 269). This is the extent of the Rojas-Davis' medical evidence.

Having carefully examined the evidence submitted by claimant from her principal treating physician, psychologist Ariel Rojas-Davis, the Court finds that the ALJ was justified in concluding in his decision that "[t]he absence of progress notes from the claimant's psychiatric treatment with Dr. Rojas-Davis has deprived the undersigned Administrative Law Judge from analyzing the pattern of said treatment and its effect on the claimant's daily living and capacity to perform work-related activities at the different treatment interviews, reason for which our analysis in terms of treatment is limited to Dr. Rojas-Davis' reports, the consultative examination and the analysis from Disability Determination Program's psychologists. As indicated above, the consultative psychiatric evaluation revealed normal mental status." (Tr. 18).

Contrary to what claimant contends, the ALJ did consider the consultative psychologists' evaluation, that is, Dr. Caro's mental status examination of Ms. Martínez-Toro dated March 20, 2006. He points out in the history of her illness that "[t]he patient has never been admitted to a psychiatric hospital and has never attempted suicide. She denied use of alcohol, illicit drugs or tobacco and drinks one cup of coffee a day." (Tr. 178). The following are Dr. Caro's findings after conducting a mental examination of Ms. Martínez-Toro: "well groomed," "appeared her stated age," "arrived to the scheduled appointment on time accompanied by her husband," "eye contact was good," and "speech was fluent, coherent, and logical," without "flight of ideas or looseness of associations" observed. Her "mood was depressed," her "affect was constricted," "she denied suicidal/homicidal ideations" and "auditory/visual hallucinations." "No delusions were elicited" during the examination. She was found to be "oriented in time, place and person."

CIVIL 11-1835CCC                                      7

(Tr. 179). The following findings as to her concentration and memory are supported by the MMSE test or Mini Mental State Exam administered on March 20, 2006, which is a screening tool to assess mental status. Her total score on this test was 28 out of a maximum of 30 points. (Tr. 180). The suggested ranges for determining the severity of cognitive disability is the following: "[m]ild: MMSE 24-21, [m]oderate: MMSE 10-20, [s]evere: MMSE <9." (Tr. 181). Her total score of 28 places her at a better than mild category. The concrete findings made by examiner Armando Caro are set forth at Tr. 179: fair concentration, immediate memory - preserved, short term memory - fair, recent memory - preserved, and remote memory - preserved. The testing procedures for memory, attention and calculations reflect that she was unable to subtract 7 from 100 five times but could spell the word "world" backwards, recalled 2 out of 3 unrelated objects in five minutes, recalled how she got to the office and what happened hours before her appointment, recalled her date of birth, social security number and past events. Her abstract thinking was preserved; her judgment and insight were limited. She was found capable of handling her own funds. Her ability for social interaction was found to be impaired. (Tr. 181). She was given a total of 9 score points, the maximum that could be obtained, for the part on language. The specific procedures for testing her orientation, memory, attention and language appear at Tr. 181.

   The MMSE administered by consultative psychiatrist Caro on cognitive status contradicts the findings on cognitive functions set forth in Dr. Rojas-Davis' initial interview (Tr. 261, translation). He reported that her attention and concentration was diminished and her immediate and recent memories were affected, without making any reference to any tests or other source of information.

   Clinical psychologist Jeanette Maldonado of the Disability and Determination Program conducted a Mental Residual Function Capacity Assessment (Tr. 275-293) on October 25, 2007. She found that claimant could understand, remember and perform simple tasks,

CIVIL 11-1835CCC                              8

concentrate for more than two hours and perform such tasks in a sustained manner, despite her depressive condition, and that she could tolerate routine supervision. (Tr. 277). She also indicated that claimant manifested a depressive syndrome characterized by sleep disturbance, psychomotor agitation or retardation, feelings of guilt or worthlessness and difficulty concentrating or thinking. (Tr. 282). She reported a moderate degree of limitation of her daily living activities and in maintaining concentration, persistence or pace; mild limitation in maintaining social functioning and no limitation resulting from episodes of decompensation. (Tr. 289).

The ALJ determined that, although claimant's depressive condition precluded her from engaging in complex work, it was not of such disabling intensity as to prevent her from performing simple, unskilled work activities not involving frequent contact with supervisors, co-workers or the public through December 31, 2006, the last day she was insured. He concluded that "[t]hrough the day last insured, the claimant was capable of performing her past relevant work as a fish cleaner," which fell in the category of simple, unskilled work activity within her residual functional capacity. (Tr. 21). The claimant described her job as a fish cleaner in a Work History Report which she filled out. At page 2 (Tr. 84), she stated that this job did not require the use of machines, tools or equipment, technical knowledge or skills or writing up reports or forms. She described her job as requiring only the use of a knife to clean the fish which she would later place on a conveyor belt. The work was done standing, without the need to stoop, climb, kneel or crouch. She gave as reasons for leaving her job (Tr. 97) that "[t]he factory closed. I felt scared and very nervous. I could not keep my concentration." At page 8, section 8 of her Work History Report (Tr. 104), she answered "no" to the question: "Would you like to receive rehabilitation services to return to work?"

Having considered all of the evidence which is part of the claimant's record, the Court finds that there is sufficient evidence to support the determination of the ALJ that she was capable, to the date last insured, of performing her past unskilled, simple work as fish

CIVIL 11-1835CCC                                    9

cleaner and that, in reaching this determination, the ALJ did not incur in either factual errors or errors of law.

    SO ORDERED.

    At San Juan, Puerto Rico, on June 29, 2012.

                                          S/CARMEN CONSUELO CEREZO
                                          United States District Judge